UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RAYMOND WRIGHT,

                        Plaintiff,

    -v-

POLICE OFFICER PHILIP RUTULANTE, Shield #77, POLICE OFFICER WILLIAM BADNER, Shield #47, and DALE KANE,

                        Defendants.[1]

No. 16-CV-10068 (KMK)

OPINION & ORDER

Appearances:

Raymond Wright
Ogdensburg, NY
*Pro Se Plaintiff*

David L. Posner, Esq.
McCabe & Mack LLP
Poughkeepsie, NY
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

      Raymond Wright ("Plaintiff"), proceeding pro se, brings this Action against City of Poughkeepsie Police Officer Philip Rutulante ("Rutulante"), Police Officer William Badner ("Badner"), and Dale Kane ("Kane") (collectively "Defendants"), pursuant to 42 U.S.C. § 1983.

---

[1] The current case caption names Police Officer Philip Ratulante. However, Defendants' briefing spells this name as Police Officer Philip Rutulante. (Defs. Mem. in Supp. of Mot. To Dismiss ("Defs.' Mem.") (Dkt. No. 46).) Accordingly, the Court will refer to the name provided by Rutulante. The Clerk of Court is respectfully directed to update the caption accordingly.

(*See* Am. Compl. (Dkt. No. 8)).) Plaintiff alleges that Defendants violated his Fourth Amendment rights in connection with his arrest on March 3, 2011. (*See generally id.*)

Before the Court is Defendants' Motion To Dismiss the Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6). (*See* Notice of Defs.' Mot. To Dismiss (Dkt. No. 43); Mem. of Law in Support of Defs.' Mot. to Dismiss ("Defs.' Mem.") (Dkt. No. 46).) For the reasons explained herein, Defendants' Motion To Dismiss is granted.

## I. Background

### A. Factual Background

The following facts are collected from Plaintiff's Amended Complaint, (*see* Am. Compl.), Plaintiff's opposition to the Motion To Dismiss, (*see* Pl.'s Opp'n To Defs.' Mot. To Dismiss ("Pl.'s Opp'n") (Dkt. No. 50); Pl.'s Addition to Opp'n To Defs.' Mot. To Dismiss ("Pl.'s Further Opp'n") (Dkt. No. 51)), correspondence submitted to the Court, (*see* Letter from Plaintiff to Court (March 1, 2017) ("Pl.'s March 1 Letter") (Dkt. No. 7); Letter from Plaintiff to Court (Mar. 22, 2017) ("Pl.'s Mar. 22 Letter") (Dkt. No. 11)), and are, for purposes of this Motion, accepted as true.

On March 3, 2011, Ingrid Calderon ("Calderon"), whom Plaintiff alleges is a witness to the crime for which he was arrested, called the police to state that "a black guy—black jacket

[and] green hat was climbing in a tree" in the rear of her home.² (Am. Compl. 3; Pl.'s Opp'n 3.)³ Following Calderon's call, Badner and Kane were sent to the scene to investigate the possible crime. (*See* Pl.'s Opp'n 7.) Calderon allegedly relayed the aforementioned description to Badner and Kane, although Plaintiff does not indicate whether any additional information was discussed at the time. (*See id.*)

At this time, Plaintiff was allegedly out on Dwayne Street in Poughkeepsie collecting cans and bottles in his shopping cart. (*See* Am Compl. 2; Pl.'s Opp'n 8.) Rutulante, an officer with the City of Poughkeepsie Police Department ("CPPD"), noticed Plaintiff on the street and recognized him based on Plaintiff's prior arrests by CPPD officers. (*See* Pl.'s Opp'n 8.) Rutulante was in his patrol car, and thereafter approached Plaintiff and began to converse with Plaintiff and exchange "[g]eneralized chit chat." (*Id.*) Rutulante was, to Plaintiff's knowledge and belief, "clearly aware [of] the [d]ispatched alert for the subject" of the call made by

---

² Plaintiff does not state the crime or crimes with which he was charged, but the available public records indicate that Plaintiff was charged with attempted burglary in the second degree and attempted burglary in the third degree "for allegedly attempting to enter a vacant first-floor apartment and an occupied second-floor apartment at a two-story two-family residence in Poughkeepsie." *People v. Wright*, 994 N.Y.S.2d 396, 399 (App. Div. 2014). The Court properly takes judicial notice of Plaintiff's state criminal proceedings as matters of public record. *See Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc.*, 969 F.2d 1384, 1388 (2d Cir. 1992) ("A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." (internal quotation marks omitted)); *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) ("[C]ourts routinely take judicial notice of documents filed in other courts . . . to establish the fact of such litigation and related filings."); *U.S. Fid. & Guar. Co. v. Petroleo Brasileiro S.A.-Petrobras*, No. 98-CV-3099, 2001 WL 300735, at *9 n.7 (S.D.N.Y. Mar. 27, 2001) ("With respect to materials from the [s]tate [c]ourt [a]ction, the [c]ourt may take judicial notice of the relevant pleadings, motion papers, orders, and judgments in the [s]tate [c]ourt [a]ction without converting [the defendant's] motion to one for summary judgment.").

³ For ease of reference, given Plaintiff's use of a standard complaint form with additional pages attached, as well as inconsistent numbering on Plaintiff's other filings, the Court cites to the ECF-generated page numbers stamped at the top of Plaintiff's filings.

Calderon. (*Id.*) Plaintiff alleges that Rutulante was profiling him as a "criminal" because he was previously known, (Pl.'s Further Opp'n 8), which ultimately led to Rutulante's "illegal positive identification" of Plaintiff as the individual seen by Calderon, (*id.* at 10 (internal quotation marks omitted)).

Plaintiff was thereafter arrested "upon improper motive," and "biased malice" on the part of Defendants. (Am. Compl. 8.) Plaintiff was subsequently indicted by a grand jury, but "all officers were not included in the initial indictment." (*Id.* at 9.) However, Plaintiff alleges that Defendants all provided testimony before the grand jury, which,

> collectively had no direct corr[e]lations other than to stain [Plaintiff's] right to a fair trial . . . [Defendants] and Calderon—promoted their collectively created version before the Grand Jury proceeding(s) and the indictment was handed down based upon the misleading determinations of misfacts streaming upon improper motives that was not based on the truth of the true facts; which was, that I was a handy subject matter with a criminal record promoted to mislead; and/or, misdirect and ignore the actual facts—which clearly in this matter no independent evidence was produced. Circumstantial evidence was blighted with the stain of taint.

(*Id.*)[4] Plaintiff alleges that "a review of the pictures of [him] taken on March 3, 2011—does not support[] the promoted theorized version told to the grand jury." (Pl.'s March 22 Letter 4.) Accordingly, Plaintiff claims that all Defendants "were collectively involved in the illegal alterations of the unverified facts and factors," (Pl.'s Opp'n 3), and thereafter took part in "illegal manipulations" of Calderon's initial call to the CPPD, (*id.* at 4).

---

[4] Specifically, Plaintiff claims that Rutulante "appeared [at] the grand jury proceedings and lied under oath," (Pl.'s Opp'n 11), that Badner "informed the grand jury . . . that a tree was utilized to gain entry to a second floor window[,but] no evidence [was] produced to substantiate his testimony . . . and as a matter of fact it was never confirmed or corroborated by any evidence other [than] his unsubstantiated verbalisms sworn to under oath," (Pl.'s Further Opp'n 12), and that Kane "was utilized at [the] whole hearing to promote the police officers determination of 'positive' identification onto [] Calderon's non-specific . . . alleg[ation] . . . [, which] was tainted by the verified police promoted [] fabrications after the fact," (*id.*).

4

Following his indictment, Plaintiff was convicted of attempted burglary in the second degree and attempted burglary in the third degree on March 22, 2012. *See Wright*, 994 N.Y.S.2d at 399. However, on October 15, 2014, the Appellate Division, Second Department, vacated this conviction and remanded the case for new trial on the grounds that the trial court improperly admitted certain prior convictions into evidence. *See id.* at 400–02. Plaintiff was tried again for these crimes, but was acquitted at this new trial in February 2015. (*See* Am. Compl. 11.) Plaintiff now seeks two million dollars in damages stemming from his allegedly false arrest on March 3, 2011, and the subsequent prosecution. (*See id.*)

B.  Procedural History

Plaintiff filed his Complaint on December 30, 2016, (*see* Compl. (Dkt. No. 2)), and filed his request to proceed in forma pauperis that same day, (*see* Request To Proceed IFP (Dkt. No. 1)). Plaintiff's request to proceed in forma pauperis was granted on January 9, 2017. (*See* Dkt. No. 6.) On January 20, 2017, Chief Judge McMahon issued an order directing Plaintiff to amend his complaint to add detail to his claims, and specifically to address the timeliness issues present in his false arrest and false imprisonment claims. (*See* Order to Amend (Dkt. No. 5).) First, Plaintiff filed a letter which added additional details to his claims, (*see* Pl.'s March 1 Letter), and shortly thereafter, on March 20, 2017, Plaintiff filed his Amended Complaint, (*see* Am. Compl. (Dkt. No. 8)), and another letter on March 22, 2017, (*see* Pl.'s March 22 Letter). On May 10, 2017, counsel for all Defendants submitted a letter to the Court requesting permission to file a Motion To Dismiss on behalf pursuant to Federal Rule of Civil Procedure 12(b)(6). (*See* Letter from David L. Posner, Esq., to Court (Dkt. No. 22).) Plaintiff thereafter filed numerous letters to the Court regarding the disclosure of sealed information related to his criminal case, (*see* Dkt. Nos. 23–26), and the Court deferred the issue until after the Motion To Dismiss was decided,

(*see* Mot. Scheduling Order (Dkt. No. 32)). Accordingly, on June 5, 2017, the Court entered an Order that Defendants could file their Motion To Dismiss by July 3, 2017, and Plaintiff should respond by August 3, 2017. (*See id.*)

On June 19, 2017, Plaintiff sought to further amend his Amended Complaint, (*see* Letter from Plaintiff to Court (June 19, 2017) (Dkt. No. 41)), but the Court denied this request given the pending Motion To Dismiss briefing schedule, (*see* Order (Dkt. No. 42)). On June 29, 2017, Defendants filed their Motion To Dismiss and accompanying papers. (*See* Dkt. Nos. 43–48.) Plaintiff filed his Opposition to Defendants' Motion on July 28, 2017, (*see* Pl.'s Opp'n), and further supplemented this opposition by letter on July 31, 2017, (*see* Pl's Further Opp'n). Defendants filed a brief reply letter on August 11, 2017, (*See* Defs.' Reply in Supp. of Mot. To Dismiss ("Defs.' Reply") (Dkt. No. 52)).

Plaintiff also submitted an application to the Court seeking appointment of counsel. (*See* Letter from Plaintiff to Court (Apr. 5, 2017) (Dkt. No. 14).) The Court denied this request without prejudice on August 1, 2017. (*See* Order (Dkt. No. 49).)

## II. Discussion

### A. Standard of Review

Defendants move to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Notice of Defs.' Mot. To Dismiss; Defs.' Mem.) The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and internal quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an

unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and internal quotation marks omitted). Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

In considering Defendants' Motion To Dismiss, the Court is required to "accept as true all of the factual allegations contained in the [C]omplaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (same). And, the Court must "draw[] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Where, as here, a plaintiff proceeds pro se, the Court must

7

"construe[] [his complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (internal quotation marks omitted). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedure and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (internal quotation marks omitted).

Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted). However, when the complaint is pro se, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (internal quotation marks omitted), including, "documents that a pro se litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted), statements by the plaintiff "submitted in response to [a] defendant's request for a pre-motion conference," *Jones v. Fed. Bureau of Prisons*, No. 11-CV-4733, 2013 WL 5300721, at *2 (E.D.N.Y. Sept. 19, 2013), and "documents that the plaintiff[] either possessed or knew about and upon which [he or she] relied in bringing the suit," *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000).

B.  Analysis

Although Plaintiff does not specify his exact causes of action, the Court construes his Amended Complaint as raising claims of false arrest, false imprisonment, and malicious

prosecution arising out of his March 3, 2011 arrest and subsequent prosecution. The Court will address each of these claims in turn.

### 1. False Arrest and False Imprisonment

"A § 1983 claim for false arrest . . . is substantially the same as a claim for false arrest under New York law." *Ackerson v. City of White Plains*, 702 F.3d 15, 19 (2d Cir. 2012), *as amended* (Dec. 4, 2012) (quoting *Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir. 1996)).[5] "Under New York law, a false arrest claim requires a plaintiff to show that 'the defendant intentionally confined him without his consent and without justification.'" *Dancy v. McGinley*, 843 F.3d 93, 107 (2d Cir. 2016) (quoting *Weyant*, 101 F.3d at 852)); *see also Ackerson*, 702 F.3d at 19 ("Under New York law, an action for false arrest requires that the plaintiff show that (1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement[,] and (4) the confinement was not otherwise privileged." (internal quotation marks omitted)); *see also Vasquez v. Reilly*, No. 15-CV-9528, 2017 WL 946306, at *7 (S.D.N.Y. Mar. 9, 2017) (same).

However, prior to reaching the merits of Plaintiff's false arrest and false imprisonment claims, it is clear on the face of the Amended Complaint that Plaintiff's claims arising out of his March 3, 2011 arrest are time-barred.[6] The Supreme Court has held that the statute of limitations

---

[5] Additionally, "[u]nder New York law, false arrest and false imprisonment are one and the same, and the elements for both are the same as for a false arrest claim under § 1983." *Hershey v. Goldstein*, 938 F. Supp. 2d 491, 515 (S.D.N.Y. 2013); *see also Posr v. Doherty*, 944 F.2d 91, 96–97 (2d Cir. 1991) (same). Accordingly, the Court's analysis applies equally to Plaintiff's false imprisonment and false arrest claims.

[6] "[A]lthough the statute of limitations is ordinarily an affirmative defense that the defendant must raise at the pleadings stage and that is subject to rules of forfeiture and waiver, district courts may dismiss an action *sua sponte* on limitations grounds in certain circumstances where the facts supporting the statute of limitations defense are set forth in the papers plaintiff himself submitted." *Walters v. Indus. & Commercial Bank of China, Ltd.*, 651 F.3d 280, 293 (2d

9

for federal claims under 42 U.S.C. § 1983 "is that which the State provides for personal-injury torts." *Wallace v. Kato,* 549 U.S. 384, 387 (2007). Accordingly, federal courts in New York apply the New York three-year statute of limitations for personal injury actions to § 1983 claims. *See Patterson v. Cty. of Oneida,* 375 F.3d 206, 225 (2d Cir. 2004) ("The statute of limitations applicable to claims brought under . . . [§] 1983 in New York is three years."). Although § 1983 draws the statute of limitations period from state law, the question of when a § 1983 claim accrues is a matter of federal law. *See Wallace,* 549 U.S. at 388 ("[T]he accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law."); *Abbas v. Dixon,* 480 F.3d 636, 641 (2d Cir. 2007) (same). Specifically, for § 1983 false arrest and imprisonment claims, the Supreme Court has held that the statute of limitations begins to run when the plaintiff is "held pursuant to [legal] process—when, for example, he is bound over by a magistrate or arraigned on charges." *Wallace,* 549 U.S. at 389 (emphasis omitted); *Ying Li v. City of New York*, 246 F. Supp. 3d 578, 601 (E.D.N.Y. 2017) ("Under federal law, a [§] 1983

---

Cir. 2011) (citations and internal quotation marks omitted). However, under such circumstances, "[p]roviding a plaintiff with notice and an opportunity to be heard is often necessary to establish the fairness and reliability of a dismissal. *See Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). Here, Chief Judge McMahon ordered Plaintiff to amend his Complaint, rather than issuing an outright dismissal, when she determined that Plaintiff's allegations of false arrest and false imprisonment arising on or about March 3, 2011 occurred almost six years prior to him commencing this Action and were therefore likely time barred. (*See* Order to Amend 5.) Specifically, Plaintiff was advised to amend his Complaint to show why the claims were timely or why the applicable limitations period should be tolled. (*See id.*) Accordingly, Plaintiff was put on notice that, without providing additional facts indicating his false arrest and false imprisonment claims were either timely or subject to equitable tolling, the Court may find these claims to be time-barred. *See Milan v. Wertheimer*, 808 F.3d 961, 963-64 (2d Cir. 2015) (per curiam) (affirming sua sponte dismissal of claims based on statute of limitations when the plaintiff was previously given an opportunity to amend his complaint); *Leonhard v. United States,* 633 F.2d 599, 609 n. 11 (2d Cir. 1980) (affirming the district court's sua sponte dismissal of certain claims based on the affirmative defense of statute of limitations even where no party had raised the defense).

false arrest claim accrues at the time that the alleged false arrest ends, *i.e.,* when the arrestee becomes held pursuant to [legal] process—when, for example, he is bound over by a magistrate or arraigned on charges." (internal quotation marks omitted); *Forbes v. City of New York*, No. 15-CV-3458, 2016 WL 6269602, at *3 (S.D.N.Y. Oct. 26, 2016) (same). Here, there is no dispute that Plaintiff was arrested on March 3, 2011, indicted by a grand jury on April 21, 2011, and ultimately convicted on March 22, 2012. Accordingly, viewed in the most favorable light to Plaintiff, the last possible date that Plaintiff could have been "held pursuant to [legal] process," thus allowing his false arrest and false imprisonment claims to accrue, was no later than March 22, 2012, the date his trial was completed. *See Wright*, 994 N.Y.S.2d at 399. Yet, Plaintiff waited until December 30, 2016 to file his Complaint, (*see* Compl.), which is nearly six years after his arrest and nearly four years after the completion of the first trial. Therefore, it is clear Plaintiff's false arrest and false imprisonment claims are untimely on the face of his Amended Complaint.

However, as Chief Judge McMahon informed Plaintiff, under federal law, the doctrine of equitable tolling may be applied to extend the statute of limitations past the expiration date. Yet, "equitable tolling of the statute of limitations is applied only in 'rare and exceptional circumstances,' where . . . 'extraordinary circumstances' prevented a party from timely performing a required act." *Deraffele v. City of New Rochelle*, No. 15-CV-282, 2016 WL 1274590, at *11 (S.D.N.Y. Mar. 30, 2016) (alteration in original) (quoting *Walker v. Jastremski*, 430 F.3d 560, 564 (2d Cir. 2005)); *see also Moses v. Westchester Cty. Dep't of Corr.*, 951 F. Supp. 2d 448, 454 (S.D.N.Y. 2013) ("[C]ourts in th[e] [Second] Circuit deciding [§] 1983 claims have applied the federal equitable tolling standard, which allows tolling where extraordinary circumstances prevented a party from timely performing a required act." (internal quotation

11

marks omitted)). "Equitable tolling is generally not available where the circumstances that a plaintiff claims prevented him from timely filing were within the plaintiff's control." *Myers v. New York*, No. 14-CV-1492, 2016 WL 2636295, at *5 (N.D.N.Y. May 9, 2016) (citing *Smaldone v. Senkowski*, 273 F.3d 133, 138 (2d Cir. 2001)); *see also Walker*, 430 F.3d at 564 (finding that equitable tolling was not available where pro se litigant's delay in filing his § 1983 action appeared to be entirely within his control). Furthermore, "[t]he party asserting that equitable tolling applies must have 'acted with reasonable diligence throughout the period he [sought] to toll.'" *Myers*, 2016 WL 2636295, at *5 (quoting *Doe v. Menefee*, 391 F.3d 147, 159 (2d Cir. 2004) (alteration in original)). "[A] plaintiff bears the burden of establishing that equitable tolling of [his] claims is appropriate." *Id.* However, "[t]o secure equitable tolling, it is not enough for a party to show that he experienced extraordinary circumstances. He must further demonstrate that those circumstances caused him to miss the original filing deadline." *Harper v. Ercole*, 648 F.3d 132, 137 (2d Cir. 2011); *see also Guo v. IBM 401(k) Plus Plan*, 95 F. Supp. 3d 512, 527 (S.D.N.Y. 2015) ("[T]o benefit from equitable tolling, a litigant must allege that extraordinary circumstances prevented him from acting in a timely manner." (internal quotation marks omitted)).

Yet, even after being granted an opportunity to amend, Plaintiff has still failed to allege facts showing that his claim was subject to equitable tolling. Plaintiff has not identified *any* "extraordinary circumstances" that would have prevented him from pursuing these claims in a timely manner. There are no allegations in the Amended Complaint, or any other filings made in conjunction with this Action, suggesting that the alleged conduct of Defendants prevented Plaintiff from commencing this action within the limitations period. Nor has Plaintiff attempted to make any showing that he acted with diligence in pursuing his false arrest claim. *See Castro*

*v. United Sec. Inc.*, No. 10-CV-6152, 2011 WL 4916402, at *2 (S.D.N.Y. Oct.17, 2011) ("[I]n contexts where *pro se* plaintiffs have provided no explanation for their failure to timely file, or no evidence of an attempt to diligently exercise their legal rights, courts have denied equitable tolling."); *see also Covington v. N.Y.C. Police Dep't*, 471 F. App'x 28, 29 (2d Cir. 2012) ("The record here reveals no extraordinary circumstances that prevented the timely filing of [the plaintiff's] false arrest claim. [The plaintiff] could have filed a complaint asserting the false arrest claim after his 1990 arrest, or even after the 1991 dismissal of the case, which would have been within the limitations period established by then-controlling case law."). Accordingly, because Plaintiff's false arrest and false imprisonment claims are untimely and not subject to equitable tolling, those claims are dismissed.

### 2. Malicious Prosecution

"In order to prevail on a § 1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment, and must establish the elements of a malicious prosecution claim under state law." *Manganiello v. City of New York*, 612 F.3d 149, 160–61 (2d Cir. 2010) (citations omitted). To prevail on a malicious prosecution claim under New York law, the plaintiff must show: "(1) the defendant initiated a prosecution against [the] plaintiff, (2) without probable cause to believe the proceeding can succeed, (3) the proceeding was begun with malice, and (4) the matter terminated in [the] plaintiff's favor." *Rentas v. Ruffin*, 816 F.3d 214, 220 (2d Cir. 2016) (alterations and internal quotation marks omitted). "[A] grand jury indictment gives rise to a presumption that probable cause exists and a claim for malicious prosecution in relation to the crimes described in the indictment thereby is defeated." *McClellan v. Smith*, 439 F.3d 137, 145 (2d Cir. 2006). "[T]he existence of probable cause is a complete defense to a claim of malicious prosecution . . . [, and] indictment by a grand

13

jury creates a presumption of probable cause that may *only* be rebutted by evidence that the indictment was procured by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003) (citations and internal quotation marks omitted). Moreover, "[a] conviction establishes the existence of probable cause which, even when the conviction is reversed on appeal, becomes a rebuttable presumption . . . [which] can be rebutted only by a showing that conviction itself was a result of fraud, perjury, or other unethical acts on the part of the defendant." *Elek v. Inc. Vill. of Monroe*, 815 F. Supp. 2d 801, 808 (S.D.N.Y. 2011) (quoting *Mitchell v. Victoria Home,* 434 F. Supp. 2d 219, 228 (S.D.N.Y. 2006) (alterations in original)).

As an initial matter, it is clear that Defendants qualify as those who initiated prosecution, as Plaintiff alleges they were responsible for, and initiated, his arrest. *See Phelps v. City of New York*, No. 04-CV-8570, 2006 WL 1749528, at *4 (S.D.N.Y. June 27, 2006) (holding that a police officer may qualify as initiating prosecution where he or she "cause[d] the initiation of criminal process," even if he or she did not actually effectuate the arrest (italics omitted)). Moreover, Plaintiff was ultimately acquitted at his second trial, which is clearly a termination in Plaintiff's favor. However, Plaintiff cannot overcome the presumption of probable cause that attached with his indictment. Plaintiff was indicted by a grand jury in Dutchess County, New York, on April 21, 2011, (*see* Aff. of David L. Posner, Esq. in Supp. Of Mot. To Dismiss ("Posner Aff.") Ex. F ("Wright Indictment") (Dkt. No. 45)), and was subsequently convicted at trial of attempted burglary in the second degree and attempted burglary in the third degree "for allegedly attempting to enter a vacant first-floor apartment and an occupied second-floor apartment at a two-story two-family residence in Poughkeepsie," *see Wright*, 994 N.Y.S.2d at 399. Although Plaintiff's conviction was vacated and remanded on appeal on the grounds that the trial court

improperly admitted certain prior convictions into evidence, *see id.* at 400–02, and he was later acquitted at a second trial in February 2015, (*see* Am. Compl. 11), the "presumption of probable cause" remains on the basis of both the indictment and the initial conviction, *Savino*, 331 F.3d at 72; *see also Mitchell v. Victoria Home,* 434 F. Supp. 2d 219, 228 (S.D.N.Y. 2006) ("A conviction establishes the existence of probable cause which, even when the conviction is reversed on appeal, becomes a rebuttable presumption." (internal quotation marks omitted)). This is a complete defense to Plaintiff's malicious prosecution claim unless Plaintiff alleges facts indicating that the indictment and the conviction were "procured by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." *Savino*, 331 F.3d at 72 (internal quotation marks omitted); *see also Elek*, 815 F. Supp. 2d at 808. It is Plaintiff who "bears the burden of proof in rebutting the presumption, and he must do so with more than mere conjecture and surmise that his indictment was procured as a result of conduct undertaken by the defendants in bad faith." *Battisti v. Rice*, No. 10-CV-4139, 2017 WL 78891, at *9 (E.D.N.Y. Jan. 9, 2017) (internal quotation marks omitted); *see also Savino*, 331 F.3d at 73 (same).

Plaintiff acknowledges that he was indicted and convicted at his first trial, but contends that Defendants all provided false and misleading testimony before the grand jury in an effort to support their identification of Plaintiff as the culprit. (*See* Am. Compl. 9.) However, the First Department expressly stated that the evidence presented at the initial trial, including "the testimony of a single eyewitness," was indeed "legally sufficient to establish [Plaintiff's] guilt . . . beyond a reasonable doubt," and "the verdict of guilt[y] . . . was not against the weight of the credible evidence." *Wright*, 994 N.Y.S.2d at 399. Moreover, Plaintiff relies exclusively on unsupported and conclusory allegations that: (1) Rutulante "appeared [at] the grand jury proceedings and lied under oath," (Pl.'s Opp'n 11); (2) Badner "informed the grand jury . . . that

15

a tree was utilized to gain entry to a second floor window[,but] no evidence [was] produced to substantiate his testimony . . . and as a matter of fact it was never confirmed or corroborated by any evidence other [than] his unsubstantiated verbalisms sworn to under oath," (Pl.'s Further Opp'n 12); and (3) Kane "was utilized at a whole hearing to promote the police officers determination of 'positive' identification onto [] Calderon's non-specific . . . alleg[ation] . . . [, which] was tainted by the verified police promoted [] fabrications after the fact," (*id.*). In other words, Plaintiff has not identified any particular lies or other misconduct that led to the indictment or initial conviction. Instead, Plaintiff relies on the conclusory belief that the evidence presented was false, misleading, or otherwise not corroborated, which is not enough to rebut the presumption of probable cause. *See Savino*, 331 F.3d at 73 (noting that "mere conjecture and surmise" are insufficient to rebut the presumption of probable cause created by an indictment by a grand jury (internal quotation marks omitted)); *Battisti*, 2017 WL 78891, at *11 (holding that "unsupported allegations that" the defendants told multiple versions of a story, had materially changed their story, or failed to disclose exculpatory evidence are "not sufficient to overcome the presumption of probable cause resulting from a grand jury indictment"); *S.B. v. City of New York*, No. 14-CV-1021, 2016 WL 4530455, at *15 (E.D.N.Y. Aug. 29, 2016) (holding that allegations that fail to "suggest the nature of the purported misconduct" are "far too conclusory to rebut the presumption of probable cause that arose following the indictment[]"); *Stukes v. City of New York*, No. 13-CV-6166, 2015 WL 1246542, at *6 (E.D.N.Y. Mar. 17, 2015) (finding "alleg[ations] that the [defendant] presented false-facts to the grand jury, and that [the d]efendants failed to turn over exculpatory evidence for presentation to the grand jury" to be "conclusory statements [that] fail to overcome the presumption of probable cause." (alterations, citations, and internal quotation marks omitted)). Accordingly, because there was probable

cause to believe the proceedings initiated against Plaintiff could succeed, the malicious prosecution claims are dismissed as to all Defendants.

III. Conclusion

For the reasons stated above, Defendants' Motion To Dismiss is granted. Because Plaintiff has already amended his Complaint once to cure the statute of limitations issue as to his false imprisonment and false arrest claims, those claims are dismissed with prejudice. *See Denny v. Barber*, 576 F.2d 465, 471 (2d Cir. 1978) (holding that the plaintiff was not entitled to "a third go-around"); *Melvin v. County of Westchester*, No. 14-CV-2995, 2016 WL 1254394, at *24 n.19 (S.D.N.Y. Mar. 29, 2016) (granting motion to dismiss with prejudice where "[the] [p]laintiff has already had two bites at the apple, and they have proven fruitless" (alterations and internal quotation marks omitted)).

However, in light of Plaintiff's pro se status, and because this is the first adjudication of Plaintiff's malicious prosecution claim on the merits, that claim is dismissed without prejudice. If Plaintiff wishes to file an amended complaint, Plaintiff should include within that amended complaint any changes to correct the deficiencies identified in this Opinion that Plaintiff wishes the Court to consider. The amended complaint will replace, not supplement, the original complaint. The amended complaint must contain *all* of the claims and factual allegations Plaintiff wishes the Court to consider. The Court will not consider factual allegations contained in supplemental letters, declarations, or memoranda. Plaintiff must file any amended complaint within 30 days. Failure to do so may result in dismissal of this Action with prejudice.

The Clerk of Court is respectfully directed to terminate the pending Motion, (Dkt. No. 43), and to mail a copy of this Opinion & Order to Plaintiff's address listed on the docket.

SO ORDERED.

DATED: March 26, 2018
    White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE